UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

REPORT AND RECOMMENDATION

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Scott R. Seelye,

                         Plaintiff,

vs.

Randy Fisher, Sheriff, and
John Doe, Deputy Sheriff,

                         Defendants.         Civ. No. 06-2848 (RHK/RLE)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment, as well as the Plaintiff's respective Motions to Amend his Complaint, and for Discovery. The Plaintiff appears pro se, and the Defendants appear by Jason M. Hill and Roger L. Rowlette, Esqs. For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted, in part; that the Plaintiff's Motions for

Discovery be denied; that the Plaintiff's Motion to Amend his Complaint be granted, in part, and that this action be remanded to the Washington County District Court.

## II. Factual and Procedural Background

The Plaintiff, who is an inmate at the Minnesota Correctional Facility in Oak Park Heights, Minnesota ("MCF-Oak Park"), commenced this action by serving the Defendants with a Summons and Complaint on June 19, 2006. See, Notice of Removal, Docket No. 1, at ¶1. On June 29, 2006, the Defendants removed the action to this Court, from Washington County District Court, pursuant to Title 28 U.S.C. §1446. See, Notice of Removal, Docket No. 1. In his Complaint, the Plaintiff asserted that "the acts [of the Defendants] were [performed] with malice, intentional[ly] and knowingly * * * in violation of the U.S. Constitution, Eighth Amendment." Complaint, Docket No. 1, Exh. 1.

In his Complaint, the Plaintiff alleges that he was transported from the Minnesota Correctional Facility in Rush City, Minnesota ("MCF-Rush City"), to the Cass County Detention Center ("CCDC"), on March 12, 2006. See, Complaint, at ¶1. The vehicle in which he was transported was driven by Ronald Propeck ("Propeck"),

who is a Transport Officer with the Cass County Sheriff's Office.[1]  The vehicle was a 2005 Ford Cargo Van, which was equipped with a "Kwik-Kit," which was specifically designed for prisoner transport.  See, <u>Affidavit of Jason Hill</u> ("<u>Hill Aff.</u>"), <u>Docket No. 9</u>, Exhs. C-E.

Prior to the Plaintiff's transport in the vehicle, Propeck had stopped at a detention facility in Sauk Centre, Minnesota, to pick up Levi Benson ("Benson"), pursuant to a Warrant issued by Cass County.  Benson was "cuffed in front, leg shackled and secured/double locked," placed in the three (3) person rear passenger side compartment, and directed to fasten his seat belt.  Transport Summary by Transport Officer Propeck, <u>Hill Aff.</u>, Exhs. A and B.

There is some dispute in the Record as to when the Plaintiff was picked up by Propeck.  According to Propeck's Transport Summary, Propeck arrived at MCF-Rush City at approximately 11:26 o'clock a.m., and thereafter, provided Benson with an opportunity to use the restroom.  <u>Id.</u>  Propeck contends that the Plaintiff was transferred to the vehicle shortly thereafter.  The Plaintiff, in his proposed Amended

---

[1]In his original Complaint, the Plaintiff alleges that a "John Doe" Cass County Sheriff's Deputy was the driver.  See, <u>Complaint</u>, at ¶1.  The Defendants have subsequently identified the driver as Propeck, and the Plaintiff -- in his proposed Amended Complaint -- alleges that the driver was, indeed, Propeck.  See, <u>Docket No. 27</u>, at ¶1.

Complaint, alleges that he was "place[d] in the other for the approximated [sic] 150 mile trip to CCDC, at appro. 9:00 a.m."[2]  See, <u>Docket No. 27</u>, at ¶4.

The Plaintiff alleges that he was "handcuffed, waist chained and leg ironed" by Propeck prior to his entry into the vehicle.  The Plaintiff contends that "[i]t was impossible to sit straight up, due to the way that [the vehicle] was customized," and that the vehicle was designed to require an occupant to sit and lean forward." <u>Complaint</u>, at ¶¶7, 8.  The Plaintiff also alleges that, "neither myself[,] nor [Benson] were put into seatbelts." <u>Id.</u> at ¶5.  The Transport Summary, completed by Propeck, states that "[b]oth Seelye and Benson were directed to put on a seat belt before leaving the facility," prior to their departure to MCF-Rush City.  See, <u>Hill Aff.</u>, Ex. A. However, the Plaintiff, in his proposed Amended Complaint, which he has signed under penalty of perjury, alleges that "Propeck did not follow me into the back of the van to seatbelt me, nor did he tell me to put on seatbelt," and that the Plaintiff "could not have seatbelted myself, being waistchained and cuffs attached to waistchain."

---

[2]It is unclear whether the Plaintiff's statement intimates that he was placed in Propeck's vehicle at 9:00 o'clock a.m., or if, instead, he was placed in a temporary restraining area at MCF-Rush City, in anticipation of Propeck's arrival at that location.  However, for purposes of these Motions, the exact time in which the Plaintiff was picked up by Propeck is not necessary to the resolution of the issues before us.

Plaintiff's Proposed Amended Complaint, Docket No. 27, at ¶¶9-10.  Bert Woodford ("Woodford"), who is the Cass County Jail Administrator,  avers that, "under these circumstances, Mr. Seelye would have the ability to buckle the seat belts located in the transport van."  Affidavit of Bert Woodford ("Woodford Aff."), Docket No. 9, Exh. F., at ¶6.

By way of additional background, the Plaintiff had been incarcerated at the CCDC on three (3) occasions, from: 1) January 6 to January 7, 2002; 2) May 8 to May 14, 2002; and 3) October 31, 2002 to April 21, 2003, which were prior to the events at issue in this action.  Id. at ¶4.  The Plaintiff also alleges that he had a "C-Spine, Flex/Extension done on 12-8-04," and that "there is degenerative disc disease present at C5-C6 and C6-C7."  Complaint, at ¶13.  In his proposed Amended Complaint, the Plaintiff also alleges that he "had [a] knee injury which was know [sic] to Cass County Jail Authorities, including Deputy Propeck, Dec. 20, 2002 thru [sic] March 12, 2003."  Proposed Amended Complaint, at ¶18.  In support of his allegation, he has offered various medical records, which document that he reported experiencing pain in his knees during that time period.  Id., Exhs. O1-O11.

In his original Complaint, the Plaintiff alleges that "every time the vehicle went over road damage, I was airborne momentarily due to no seatbelt," and that

"[e]verytime [Propeck] applied the brakes, I was forced to brace myself with legs and back," which "caused considerable pain and suffering." <u>Complaint</u>, at ¶¶15-17.  The Plaintiff further contends that, "[w]henever I would yell in response to being thrown around due to either, road conditions, braking or careless driving, this would seem to spur [Propeck] to drive more reckless [sic]." <u>Id.</u> at ¶19.

The Plaintiff alleges that, after his arrival at the CCDC, he asked to see a nurse. See, <u>Complaint</u>, at ¶20; <u>Proposed Amended Complaint</u>, at ¶25.  In response, the Defendants contend that "[t]here is no record of back or neck complaints on the part of Mr. Seelye upon his arrival at the [CCDC] on March 12, 2006," and that "[t]here is no record of Mr. Seelye making a request to see a nurse." <u>Woodford Aff.</u>, at ¶6. However, the Plaintiff concedes that "various pain medications were dispensed by Cass County jail authorities, including Deputy Propeck." <u>Proposed Amended Complaint</u>, at Exh. O, at p. 1.

The Plaintiff was then taken to his Court appearance, where the Plaintiff allegedly advised the presiding Judge of the circumstances of his trip to the CCDC. See, <u>Complaint</u> at ¶22.  On March 13, 2006, the Plaintiff was returned to MCF-Rush City in a vehicle driven by two (2) unidentified deputies.  One of the Deputies allegedly told the Plaintiff that "[he] planned the route that [Propeck] was to drive

when he picked you up." Id. at ¶¶23, 26.  Upon his return, the Plaintiff informed the

MCF-Rush City medical staff that he was experiencing pain as a result of his trip to

his Court appearance.  Id. at ¶27.  The Plaintiff has provided medical records from

MCF-Rush City, but the earliest medical record for the Plaintiff, which occurs after

his transport by Propeck, is dated March 15, 2006, at which time, he requested

physical therapy at MCF-Rush City, and reported non-acute pain.  See, Docket No.

23, Exh. A-5.

In passing, we note that the Plaintiff was previously seen on multiple occasions

by medical staff at various Minnesota Department of Corrections ("DOC") facilities,

prior to the events encompassed by this action, and as recently as February 27, 2006,

at which time, he was diagnosed with chronic pain.  Id.  The next medical record,

which is dated March 31, 2006, was in preparation for his treatment at a pain clinic.

Id. at Exh. C-2 to C-4.  At that time, the Plaintiff was subjected to a complete medical

examination, during which he reported dental and facial pain, which he attributed to

being "jammed into a water fountain back in the early 90s."  Id.  He reported a long

history of degeneration of the cervical spine, as well as shoulder pain.  At a follow-up

appointment on April 4, 2006, the Plaintiff reported that the testing on March 31,

2006, "exacerbated his chronic pain." No mention of the events of March 12 and 13, 2006, were documented in the medical records provided for our review.

On April 11, 2006, the Plaintiff was seen for a physical evaluation. The treating medical source noted that "[t]he patient is clearly a chronic pain patient that is going to be a handful while in corrections," and that "[t]his is especially true when you have someone from Segregation who has nothing but time to think about his pain." The treating physician's prognosis notes that "[a] fair number of red flags peeked out at me today, putting his complaints in bilateral glove-type numbness, which is virtually unheard of in legitimate medical cases, the bilateral nature of this, the sheer number of pain complaints he had, and the number of locations." Id. at Exh. D-7.

On April 16, 2006, the Plaintiff was seen in the outpatient evaluation room, where his lower back, neck, right shoulder, and right elbow, were examined. The Plaintiff reported that "he has never done any really formal physical therapy in the recent history." Id. at Exh D-5. In regard to his lower back, he described "yet another chronic problem for years." The treating physician noted that he did not "detect any active neurological signs," and that the Plaintiff "was hypersensitive to palpation of the spinous process." The treating physician opined that "the patient clearly is internalizing many things, and his pain tolerance is very low." The prognosis was

that, "at this time, I see no need for any type of bracing while in Segregation, whether it be his knee, his elbow or his back," and that "[n]one of these would be considered necessary and might even be counterproductive."  Id.  However, none of the medical records, which are dated after the transport from CCDC, make any mention of injury, or exacerbation of injury, resulting from Propeck's transport of the Plaintiff, or from any denial of medical treatment during that time period.

In his proposed Amended Complaint, the Plaintiff now seeks to add four (4) Defendants to this action: 1) Propeck, who had originally been identified as "John Doe;" 2) Woodford; 3) the Sheriff's Civil Service Commission ("the Commission"); and 4) the Cass County Board of Commissioners ("the Board").  The Plaintiff also seeks to allege that he was denied the equal protection of the laws under the Fourteenth Amendment, and that he was denied medical treatment.  See, Proposed Amended Complaint, Docket No. 27, at ¶¶53-55.  He further alleges that Fisher, the Board, and the Commission, all failed to properly train, and supervise Propeck.  See, Id. at ¶58.

III.  <u>Discussion</u>

A.    <u>The Plaintiff's Motion for Leave to Amend his Complaint</u>

      1.    <u>Standard of Review</u>.  Under the Federal Rules of Civil Procedure, a Plaintiff has a right to amend his Complaint "once as a matter of course at any time before a responsive pleading is served," and otherwise, only by leave of the Court, which shall "be freely given when justice so requires."  See, <u>Rule 15(a), Federal Rules of Civil Procedure</u>.  After a responsive pleading has been filed, however, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party."  <u>Id.</u>  Rule 15(a) provides, in pertinent part, as follows:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

> If the underlying facts or circumstances re-lied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reasons -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amend-ments previously allowed, undue prejudice to the opposing

-10-

> party by virtue of allowance of the amendment, futility of
> amendment, etc. -- the leave should, as the rules require, be
> "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also, Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

Thus, while leave should be freely given, leave should not be given where the proposed amendments are futile.  See, DeRoche v. All American Bottling Corp., 38 F. Supp.2d 1102, 1005 (D. Minn. 1998)("Although we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted"), citing Humphreys v. Roche Biomedical Laboratories, Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989); Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983); Norbeck v. Davenport Community Sch. Dist., 545 F.2d 63 (8th Cir. 1976), cert. denied, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); see also, United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 935 (8th Cir. 2001)("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim."), cert. denied, 536 U.S. 2593 (2002).

2.    Legal Analysis.  The Plaintiff, in his Motion to Amend his Complaint, seeks to add several parties, as well as substantive claims, to his Complaint. Specifically, he seeks to: 1) substitute Propeck as a party for the previously named "John Doe;" 2) add Woodford, the Commission, and the Board, as Defendants; 3) add a claim that he was denied equal protection of the laws under the Fourteenth Amendment; 4) add an Eighth Amendment claim for denial of medical treatment; and 5) add tort claims for "personal injury, pain and suffering of body and mind, mental anguish, intentional infliction of emotional distress and for breach of duty and right, caused by the these defendants' wrongful acts," pursuant to Minnesota Statutes Sections 466 et seq. and 375.31.[3]   Since the Defendants filed an Answer to the Complaint, we must consider whether leave should be granted so as to allow an Amended Complaint.

a.    The Proposed Addition of Propeck, the Board, and the Commission.

As an initial matter, we find no undue prejudice arising from the substitution of Propeck for John Doe, given that the Defendants' Motion for Summary

---

[3]The Plaintiff also alleges that the vehicle, in which he was transported to the CCDC, was "unconstitutional for its purpose." Proposed Amended Complaint, at ¶59. However, it is unclear what relief, if any, is premised on that assertion, and we see no reason to address that assertion further.

Judgment is premised on Propeck's substitution as John Doe, and they have substantively argued that the Plaintiff's claims against Propeck fail as a matter of law. Accordingly, we grant the Plaintiff's Motion to Amend, as to the substitution of Propeck as a party.

As to the proposed addition of the Board and the Commission, we find that such amendments would be futile as a matter of law, given that those bodies are not suable entities.  See, Edwards v. Baer, 863 F.2d 606, 609 (8th Cir. 1988)(affirming the District Court's dismissal of the plaintiff's claims as "[t]he St. Louis Board of Police Commissioners is not a suable entity"); In re Scott County Master Docket, 672 F. Supp. 1152, 1163 n. 1 (D. Minn., 1987), aff'd. sub nom., Meyers v. Scott County, 868 F.2d 1017 (8th Cir. 1989); see also, De la Garz v. Kandiyohi County Jail, 18 Fed. Appx. 436, 437 (8th Cir., August 30, 2001), citing Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992)("Sheriff's departments and police departments are not usually considered legal entities subject to suit."); Corbett v. City Center of Minneapolis, 2001 WL 1640108 at *1 (D. Minn., July 16, 2001)(noting civil service commissions are not suable entities under Minnesota law).

Similarly, if we construe the Plaintiff's claims to be pled against Cass County, we also find that such an addition would be futile, as he has failed to allege that Cass

County has adopted a policy or custom, which authorized the alleged conduct. Notably, the doctrine of <u>respondeat</u> <u>superior</u> does not apply to Section 1983 claims, which means that a defendant cannot be held vicariously liable for the alleged constitutional misdeeds of an employee or subordinate.  See, <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978);  <u>Miller v. Compton</u>, 122 F.3d 1094, 1100 (8th Cir. 1997).  Stated otherwise, "[a] municipality cannot be held liable solely because it employs a tort feasor -- or in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory."  <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 603 (8th Cir. 2004), quoting <u>Monell v. Department of Social Services</u>, supra at 691.

A municipality, such as Cass County, can be liable under Section 1983, if a plaintiff can prove that the municipality has adopted some policy, custom, or practice, that caused a violation of the plaintiff's Federal constitutional rights.  See, <u>Lund v. Hennepin County</u>, 427 F.3d 1123, 1125 (8th Cir. 2005); <u>City of Canton v. Harris</u>, 489 U.S. 378, 386-87 (1989); see also, <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws"); <u>Williams v. Little Rock Municipal Water Works</u>, 21

-14-

F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting Monell v. Department of Social Services, supra at 690.

Liberally construed, the Plaintiff's Complaint alleges that his constitutional rights were violated when he was allegedly injured during his transport by Propeck, and from an asserted denial of medical treatment.  However, he does not allege that the conduct of the persons, who allegedly committed those acts, was performed pursuant to a policy or custom of Cass County, and he has provided no evidentiary showing to support his assertion that Cass County failed to supervise its employees.  See, Reasonover v. St. Louis County, Missouri, 447 F.3d 569 (8th Cir. 2006).  As such, he has failed to allege any facts, which would give rise to a viable Section 1983 claim against Cass County.  To the extent that his Complaint can be construed to challenge his transportation in a vehicle while not secured in a seat-belt, we find that our Court of Appeals has expressly resolved that question.  See, Spencer v. Knapheide Truck Equipment Co., 183 F.3d 902, 906 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000)("[E]ven using an objective standard, we do not think that the Board's purchase

of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a 'substantial risk of serious harm'"). Therefore, we recommend that the Plaintiff's Motion to Amend, so as to include Cass County, the Board, or the Commission be denied.

b.    The Proposed Equal Protection Claim

As to the Plaintiff's attempt to plead an Equal Protection claim, we find that such a claim would be futile as a matter of law, since he has not pled an actionable Equal Protection claim. In order to sufficiently state an Equal Protection claim, a prisoner must show: (1) that "he is treated differently than a similarly situated class of inmates," (2) "that the different treatment burdens one of his fundamental rights," and (3) that "the different treatment bears no rational relation to any legitimate penal interest." Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 984 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004), citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998)[en banc]. Since there are no factual allegations in the Plaintiff's proposed Amended Complaint that satisfy any of those requisites, we find that he has failed to plead an actionable Equal Protection claim, and accordingly, we recommend the denial of that aspect of his Motion to Amend as futile.

c.     The Proposed Addition of Woodford, and an Eighth Amendment Claim for Denial of Medical Treatment.[4]

The Plaintiff also asks to add claims against Woodford, as well as a claim for the denial of medical treatment.  Specifically, as to Woodford, the Plaintiff alleges he was told by a State judge to "have a nurse see plaintiff, after I told him about the kennel ride," and that, "if [the Plaintiff] needs to go to the hospital, you need to take him."  Proposed Amended Complaint, at ¶¶28, 37.  The Plaintiff also claims that he was "denied medical treatment (Dec. 20, 2002 thru [sic] May 27, 2003) and (3-12 and 3-13-06)" Id. at ¶55.  However, the Plaintiff also alleges that "[he] was transported to PHS, Indian hospital by Cass County jail authorities, and/or received pain medications from Indian hospital on:  Dec. 20 and 30, 2002; and Jan. 3, 7, 8, 22, and 29; Feb. 3, 13 and 21; and March 12, 2003 by Cass County jail for knee injuries." Id. at ¶34.  The Plaintiff further provides, as attached exhibits to his proposed Amended

_____

[4]While we address the Plaintiff's Motion to Amend on grounds of futility, as argued by the Defendants, we note that the Defendants have also moved for Summary Judgment on the Plaintiff's claims of denied medical treatment, see, Defendants' Motion for Summary Judgment, Docket No. 8, at pp. 19-20, prior to the Plaintiff's Motion to Amend.  Accordingly, while we necessarily look to the proposed amended pleadings to determine whether they are futile as a matter of law, we note that if we were to find such claims were not futile, solely based upon the pleadings, we would find that they would be subject to dismissal, pursuant to the Defendants' Motion for Summary Judgment.

-17-

Complaint, medical records, which purportedly document his trips to the hospital, as well as the medical treatment he received from December 20, 2002, through March 12, 2003.  He further notes that "various pain medications were dispensed by Cass County jail authorities, including Deputy Propeck."  Id. at Exhs. O1-11.  In addition, the Plaintiff has produced medical records for his time of incarceration at other Minnesota Correctional Facilities.  See, Affidavit of Scott Seelye, Docket No. 27, Exhs. A-I.

Here, we find that the Plaintiff's Motion to Amend his Complaint to assert claims for the denial of medical treatment, or to add Propeck, is futile.  It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'"  Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106.  To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija,

-18-

114 F.3d 778, 784 (8th Cir. 1997).  "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Id.

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002).  However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 295 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995), see also, Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulany v. Carnahan, supra at 1239; DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

As is evident from the Plaintiff's proposed Amended Complaint, as well as his proffered medical records, he consistently received medical treatment during the period from December 20, 2002, through May 27, 2003, and he has not alleged any

specific denial of medical treatment during that time frame.  While he alleges that he was "never taken to weekly therapy at Indian hospital" <u>Proposed Amended Complaint,</u> at ¶38, his own medical records show to the contrary.  In addition, he references an orthopedic referral, which was allegedly provided on January 29, 2003. However, he does not allege that either Propeck, Woodford, or Smith, was personally responsible for denying him access to that referral.  Accordingly, we find that the Plaintiff's proposed amendments, as to his medical treatment in 2002-2003 is futile, as a matter of law.

As to any purported denials of medical treatment on March 12 or March 13, 2006, we find that the Plaintiff has similarly failed to plead an actionable violation of his Eighth Amendment rights.   Even if we assume for present purposes, that the Defendants were deliberately indifferent to the Plaintiff's medical needs, the Plaintiff has, nevertheless, failed to satisfy the objective criterion of the <u>Farmer</u> dialectic, by establishing the existence of a deprivation that was "objectively, sufficiently serious." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

It is well-settled that "[t]he objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that the defendants ignored an acute or escalating situation or that delays adversely affected [the

plaintiff's] prognosis, given the type of injury in [the] case." Dulany v. Carnahan, 132

F.3d 1234, 1243 (8th Cir. 1997), quoting Crowley v. Hedgepeth, 109 F.3d 500, 502

(8th Cir. 1997); see also, Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006);

Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997); Beyerbach v. Sears, 49 F.3d

1324, 1326 (8th Cir. 1995).  Here, there is no "verifiable medical evidence" that the

Defendants ignored "an acute or escalating condition," or that a delay in treatment

adversely affected the Plaintiff's prognosis,  and indeed, the evidence is to the

contrary.  As noted, a chart notation, on March 15, 2006, reflects that the Plaintiff was

experiencing "non-acute" pain, while at MCF-Rush City.   Thereafter, the Record

contains no intimation that the condition worsened, or that the Plaintiff's general

health deteriorated, as a result of his time in Cass County custody.

In opposition to the Defendants' Summary Judgment Motion, the Plaintiff has

attached copies of his DOC medical records, which were generated from 1983 through

July of 2006, when this action was commenced.  Those records confirm that, during

the Plaintiff's subsequent appointments with medical staff, he voiced no additional

complaints concerning any injuries or exacerbation of injury, which resulted from the

alleged acts of the Defendants on March 12 and March 13, 2006, although the records

do show that, on numerous occasions, both prior, and subsequent to the period at

issue, the Plaintiff sought institutional medical assistance for other, unrelated health complaints.  See, Plaintiff's Affidavit, Docket No. 22, Exhs. A-I.

Moreover, there is no evidence, in the Record, that Fisher, Propeck, or Woodford, ever received an express request from the Plaintiff for any form of medical treatment.  While the Plaintiff alleges that he was not provided a hinged knee-brace, asthma treatment, or pain medication, during his time while held in custody by Cass County authorities, there is no allegation that he ever requested, or was denied, those medical services.  Furthermore, the Plaintiff represents that Propeck "provided him with pain medication."  See, Docket No. 27, Exh. O, at p. 1.  Further, the Plaintiff alleges that he requested to see a nurse on his arrival at the CCDC, but he does not specify to whom the request was made, nor does he present any verifiable evidence that such a request was made.  In contrast, Woodford avers that no such request was ever made.  See, Woodford Aff., ¶6.

We also note the Plaintiff's assertion that a Minnesota State Judge "told Woodford to have a nurse see plaintiff."  Proposed Amended Complaint, at ¶28.  However, the Plaintiff's Complaint alleges that he was transported to MCF-Rush City on March 13, 2006, after the Hearing, and he requested medical treatment at that time.  Id. at ¶¶29, 32.  As the Plaintiff was no longer in Woodford's, or Cass County's

custody, after he was transported to the MCF-Rush City facility, we find that Woodford's addition as a party, as well as the assertion of claims for an alleged denial of medical treatment, would be futile as a matter of law.

Since the Plaintiff has not satisfied the objective prong of the <u>Farmer</u> inquiry, and since we have no evidence, or allegation, that the Defendants knowingly withheld any requested medical treatment, we recommend that the Plaintiff's Motion to Amend his Complaint so as to add a denial of treatment claim, be denied as futile.

d.    <u>The Plaintiff's Proposed State Tort Claims</u>.

The Plaintiff also seeks to amend his Complaint in order to assert State law tort claims, pursuant to Minnesota Statutes Section 466 <u>et seq.</u> against Propeck for his failure to place the Plaintiff in a seatbelt during his trip to the CCDC. The Defendants contend that such a claim is futile, as Propeck is entitled to official immunity, as the alleged act was discretionary.  See, <u>Defendants' Memorandum in Opposition to Plaintiff's Motion to Amend</u>, <u>Docket No. 37-1</u>, at p. 8.

In Minnesota, governmental employees are entitled to immunity from State law claims, when they are performing discretionary functions. See, e.g, <u>Kuha v. City of Minnetonka</u>, 176 F. Supp.2d 926, 934 (D. Minn. 2001)(applying Minnesota law); <u>Janklow v. Minnesota Board of Examiners</u>, 552 N.W.2d 711, 715-16 (Minn. 1996).

-23-

As government employees, they are "accorded near complete immunity for their actions in the course of their official duties, so long as they do not exceed the discretion granted them by law." Janklow v. Minnesota Board of Examiners, supra at 716. Such official immunity is "intended 'to protect public officials from the fear of personal liability that might deter independent action.'" Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. App. 2001), rev. denied (Minn., February 28, 2002). Generally, police officers are discretionary officials. Id.

As a result, the heart of our analysis, under a claim of official immunity, is the nature of the governmental action; that is, was the act discretionary or ministerial. "[I]n analyzing any immunity question it is essential to identify the precise governmental conduct at issue." Watson v. Metropolitan Transit Commission, 553 N.W.2d 406, 415 (Minn. 1996). Discretionary decisions are those which involve the exercise of judgment or discretion. See, Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990); cf., Mowatt v. Hennepin County, 2002 WL 857733 at *4 (Minn.App., May 7, 2002) (stating that discretionary acts are those that involve "the exercise of individual judgment in carrying out official duties")[unpublished decision]. In contrast, ministerial decisions, which are involve decisions that are absolute, certain, and imperative, and involve merely the execution of a specific duty that arises from fixed

and designated facts, see <u>Rico v. State</u>, 472 N.W.2d 100, 107 (Minn. 1991), are not immune to suit.  "Some degree of judgment and discretion will not necessarily confer discretionary immunity on an official; the crucial focus is upon the nature of the act." <u>Elwood v. County of Rice</u>, 423 N.W.2d 671, 677 (Minn. 1988).

The categorization of an act as discretionary or ministerial is a legal question, which the Court determines as a matter of law.  See, <u>Kelly v. City of Minneapolis</u>, 598 N.W.2d 657, 664 (Minn. 1999).  "In making this determination the Court [should] keep[] in mind that official immunity, 'protects public officials from the fear of personal liability that might deter independent action and impair the effective performance of their duties.'"  <u>Kuha v. City of Minnetonka</u>, supra at 934, quoting <u>Elwood v. County of Rice</u>, supra at 677.  "Only when officials act outside the scope of their charged authority can they be deemed to have waived this immunity and be held personally liable for their negligence."  <u>Watson v. Metropolitan Transit Commission</u>, supra at 415.  The burden of proving immunity is on the defendant. <u>Engele v. Indep. Sch. Dist. No. 91</u>, 846 F. Supp. 760, 768 (D. Minn. 1994); <u>Rehn v. Fischley</u>, 557 N.W.2d 328, 333 (Minn. 1997).

In an unpublished Minnesota Court of Appeals case, a police officer's decision not to buckle a prisoner's seat-belt was held to be a discretionary act.  See, <u>Reed v.</u>

City of Minneapolis, 1995 WL 15084 at *2 (Minn. Ct. App., January 17, 1995).

However, that conclusion was premised on evidence in the record, which "indicate[d]

that the Minneapolis Police Department's policy 'is to leave the decision to use or not

to use seat belts to the discretion of the transporting officer.'" Id.  While we recognize,

here, that in the ordinary course, Propeck's decision not to fasten the Plaintiff's seat-

belt is a discretionary act, we have no showing that Cass County has a policy which

affords a transporting officer discretion in fastening a prisoner's seat-belt.

Accordingly, we cannot say, as a matter of law, that Propeck's decision not to fasten

the Plaintiff's seat-belt, is discretionary so as to invoke official immunity.

Accordingly, we recommend the grant of the Plaintiff's Motion to amend his

Complaint in order to assert his tort claims against Propeck, pursuant to Minnesota

Statues Section 466 et seq., for his alleged failure to secure the Plaintiff's seatbelt.

B.     The Defendants' Motion for Summary Judgment

       1.     Standard of Review.  Summary Judgment is not an acceptable means of

resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and

in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442

F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327

(1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

    2.    Legal Analysis. The conditions of a prisoner's confinement are clearly subject to Eighth Amendment scrutiny. Helling v. McKinney, 509 U.S. 25 (1993); Brown v. Nix, 33 F.3d 951, 954 (8th Cir. 1994); Martin v. Sargent, 780 F.2d 1334,

-28-

1338 (8th Cir. 1985); C.H. v. Sullivan, 718 F. Supp. 726, 733 (D. Minn. 1989), aff'd, 920 F.2d 483 (8th Cir. 1990).  Indeed, our Court of Appeals has mandated a "careful judicial scrutiny" of prison conditions.  Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989), cert. denied, 490 U.S. 1027 (1989).

Under the Eighth Amendment, it is well-settled that a prisoner's confinement must not result in serious deprivation of his basic human needs or of a minimal, civilized measure of life's necessities.  See, Helling v. McKinney, supra at 32; DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 199-200 (1989); Estelle v. Gamble, 429 U.S. 97, 102-03 (1976); see also, Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  As stated, the focus is on "basic human needs -- e.g., food, clothing, shelter, medical care and reasonable safety."  Helling v. McKinney, supra at 32, citing DeShaney v. Winnebago County Department of Social Services, supra at 200; see also, Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995); Brown v. Nix, supra at 955.  "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones."  Farmer v. Brennan, supra at 832.

Accordingly, prison officials have violated the Eighth Amendment "only when two requirements are met."  Id. at 834.  First, the alleged deprivation must be, objectively, sufficiently serious, that is, the prison official's act, or failure to act, must

-29-

have resulted in "the denial of the minimal civilized measure of life's necessities." Id., citing Wilson v. Seiter, 501 U.S. 294, 298 (1991); Williams v. Delo, supra at 445; Brown v. Nix, supra at 955.  Second, to be liable, a prison official "must have a sufficiently culpable state of mind," id., citing Wilson v. Seiter, supra at 302-03, and, in cases such as this one, a subjective standard -- namely, a "deliberate indifference" to an excessive risk posed to an inmate's health and safety -- must be satisfied before a finding of liability can attach.

Here, the core of the Plaintiff's Complaint is his allegation that Propeck's failure to place him in a seat belt, prior to his transport to the CCDC, resulted in aggravating the Plaintiff's pre-existing neck and back injuries.  Specifically, he alleges that his injury resulted from being "airborne momentarily" when the vehicle encountered "road damage," and that "[e]verytime [Propeck] applied the brakes," the Plaintiff was "forced to brace [him]self with legs and back."  Complaint, at ¶¶15-18.

On several occasions, our Court of Appeals, as well other Courts, have addressed similar constitutional claims, arising from instances in which a prisoner alleged injuries suffered while not seat-belted in a law enforcement vehicle, and while

being held in custody.  While none of the cases are exactly on point, we find guidance

from their analyses.[5]

In an unpublished opinion, our Court of Appeals reversed a dismissal of a

prisoner's Section 1983 claim, arising from injuries sustained from an automobile

collision, which occurred while he was being transported in a deputy sheriff's car.

See, <u>Brown v. Morgan</u>, 39 F.3d 1184, 1184 (8th Cir. 1994)(Table Disposition).  There,

the plaintiff asserted that the police officer "manifested deliberate indifference for [the

plaintiff's] safety by refusing to let him wear a seat belt, driving at a high rate of speed

in bad weather, refusing to slow down despite [the plaintiff's] pleas for him to do so,

purposely speeding up, and smiling when he saw that [the plaintiff] was scared,

asking, 'Are you scared?'"  <u>Id.</u>  Our Court of Appeals found that the plaintiff had

alleged sufficient facts to assert that his Eighth Amendment rights were violated, such

that dismissal, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, was

improper.  <u>Id.</u>

---

[5]We are somewhat dismayed by the Defendants' failure to discuss, or even cite, <u>Brown v. Missouri Department of Corrections</u>, 353 F.3d 1038 (8th Cir. 2004), as the factual circumstances are at least relevant to a responsible discussion of the issues presented by the Plaintiff's Eighth Amendment claim.

In Spencer v. Knapheide Truck Equipment Co., supra, a pretrial detainee was handcuffed, while intoxicated, and placed in the rear of a patrol wagon, and into a prisoner compartment. The wagon lacked seat belts, or any other installed safety devices. The plaintiff claimed that he had difficulty maintaining his balance, and he was "tossed around as Officer Trussler made turns, stops, and starts." Id. at 904. At some point during the voyage, the plaintiff was thrown into the bulkhead, suffering injuries that, he alleged, had rendered him a quadriplegic. The Spencer Court analyzed the plaintiff's claims within a due process framework, and -- employing the reasoning of Farmer -- found that "[r]egardless of whether the term is framed as a subjective or objective test, the alleged deprivation must still be 'sufficiently serious' and 'pose a substantial risk of serious harm.'" Id. at 906, citing Farmer v. Brennan, supra at 834, and Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998). Specifically, the Court, in Spencer, found that, "even using an objective standard, we do not think that the Board's purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a 'substantial risk of serious harm.'" Id. at 906. As phrased by our Court of Appeals, "[i]n short, we find that the complaints do not establish that the Board was deliberately indifferent to conditions that posed a substantial risk of serious harm." Id.

-32-

Subsequently, in <u>Brown v. Missouri Department of Corrections</u> ("<u>Brown I</u>"),
353 F.3d 1038 (8th Cir. 2004), our Court of Appeals determined that the plaintiff
sufficiently pled an Eighth Amendment claim, for injuries sustained from a motor
vehicle accident, which occurred during the plaintiff's transport, by the Missouri
Department of Corrections ("MDOC"), to a correctional facility.   There, Brown
allegedly requested the correctional officers to fasten his seatbelt, as he was shackled
with "bellychains, handcuffs, blackbox, and leg chains."  <u>Id.</u> at 1040.  The officers
refused, and allegedly responded with "aw hell you all will be alright," and "what you
all don't trust our driving?"   <u>Id.</u>  The plaintiff was "scared by the way the drivers of
the vans were driving: speeding ('up to 70 to 75 miles an hour'), following closely,
and passing cars 'even if the road markings suggested otherwise.'"  <u>Id.</u>  The plaintiff's
transport vehicle eventually crashed into two (2) other MDOC vans, and the plaintiff
experienced  lower  back  trauma,  and  whiplash.   <u>Id.</u>   Our  Court  of  Appeals
"conclude[d] [that] Brown stated a claim against the five COs involved in transporting
the inmates, as he alleged he asked them all to fasten his seatbelt, but they refused."
<u>Id.</u>, citing <u>Fruit v. Norris</u>, 905 F.2d 1147, 1150 (8th Cir. 1990) and <u>Brown v. Morgan</u>,
supra at 1184.

After our Court of Appeals ruled in <u>Brown I</u>, the defendants brought a subsequent Motion for Summary Judgment as to the plaintiff's claims. See, <u>Brown v. Fortner</u> ("<u>Brown II</u>") 2006 WL 2796388 (W.D. Mo., September 25, 2006). The District Court reiterated that the plaintiff had alleged that the defendants refused to provide a seatbelt, after the plaintiff's explicit request, and operated the MDOC van "in such a manner that a substantially increased risk of harm to plaintiff existed." <u>Id.</u> at *2. In support of the reckless driving charge, the plaintiff alleged that the defendant "was driving the van in a convoy formation with other MDOC vehicles at excessive rates of speed, following too closely and being followed too closely, which significantly increased the risk of an accident." <u>Id.</u> The District Court also noted that there was evidence that the defendants "drove recklessly and with the knowledge that plaintiff was being unrestrained by a seatbelt." <u>Id.</u> Accordingly, the District Court denied the defendants' Motion for Summary Judgment.

With the foregoing as our guide, we find the circumstances presented here entitle the Defendants to Summary Judgment on the Plaintiff's claim, which arises from the asserted failure to place the Plaintiff in a seatbelt. It is undisputed that Propeck did not place the Plaintiff in a seatbelt. However, when the facts are taken in favor of the non-moving party, we cannot say for certain that Propeck advised the

Plaintiff to fasten his seatbelt, or whether the Plaintiff would have been able to fasten his own seatbelt, in the first-instance, owing to the restraints that were placed on his physical movement, despite evidence to the contrary.

Here, our analysis focuses, necessarily, on whether Propeck manifested deliberate indifference to the Plaintiff's safety. See, <u>Brown v. Missouri Department of Corrections</u>, supra at 1040; <u>Fruit v. Norris</u>, supra at 1150; <u>Brown v. Morgan</u>, at *1. As an initial matter, we note that the Plaintiff never alleges that he expressly asked Propeck to place him in a seatbelt, or that Propeck knew he was not restrained by a seatbelt. In fact, the Plaintiff alleges that he "climbed into the back of the van without assistance from the Deputy and without the benefit of my hands," and that "Deputy Propeck did not follow me into the back of the van." See, <u>Proposed Amended Complaint</u>, at ¶¶8-9.

Given that the Plaintiff never affirmatively requested that Propeck fasten his seatbelt, we find that Propeck's omission to verify the use of a seat belt, or to personally secure the Plaintiff in a seatbelt, does not rise to the level of "deliberate indifference" to the Plaintiff's safety. Our conclusion is based on the recognition, by our Court of Appeals, that "we do not think that the Board's purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these

wagons were policies that obviously presented a 'substantial risk of serious harm.'" Spencer v. Knapheide Truck Equipment Co., supra at 906; see also, Dexter v. Ford Motor Co., 92 Fed.Appx. 63, 642 (10th Cir. 2004)("We have identified no federal case holding that failure to seatbelt an inmate, standing alone, violates the Eighth Amendment"). Accordingly, we find Brown v. Missouri Department of Corrections, supra, inapposite to the situation here, as that case rested on the fact that the officials denied the prisoner's express request that he be placed in a seatbelt, and the officials subsequently drove in a clearly reckless manner which, not surprisingly, led to an accident. See, Brown v. Missouri Department of Corrections, supra at 1040; Brown v. Morgan, supra at *1.

Instead, we find the circumstances, here, more closely approximate those found in other District Court cases, where the Courts found no Eighth Amendment violation when, for example, a plaintiff failed to request that he be placed in a seatbelt, and subsequently suffered an alleged injury as a result. See, e.g., Carrasquillo v. City of New York, 324 F. Supp. 2d 428 (S.D.N.Y, 2004)("This [Eighth Amendment] claim must also be dismissed, since failure to provide seatbelts to prisoners is not a constitutional violation under §1983"), citing Spencer v. Knapheide Truck Equipment Co., supra at 907, and Dexter v. Ford Motor Co., supra at 641; Riddick v. Reiger,

-36-

2006 WL 2644924 at *7 (M.D. Fla., September 14, 2006)(finding no Eighth Amendment violation where "Plaintiff does not claim that he requested and was denied the use of the seatbelt," and "based on the allegations of the Complaint it is clear that Plaintiff's injuries resulted from [the defendant's] actions to prevent an accident [where] [the defendant] quickly applied the brakes to avoid hitting another car."), discussing Spencer v. Knapheide Truck Equipment Co., supra, and Dexter v. Ford Motor Co., supra; Jones v. Collins, 2006 WL 1528882, at *1-*2 (S.D. Ill., June 1, 2006)(finding no Eighth Amendment violation resulting from defendant's "reckless driving that led to the accident," and "for [the defendants'] negligence in failing to secure [the prisoner's] seatbelt in the van prior to leaving the jail.").

Furthermore, the Plaintiff has not pled that Propeck drove in a reckless manner, in anything other than a conclusory way. In his original Complaint, the Plaintiff only notes that the vehicle "went over road damage," and that the Plaintiff "was forced to brace [him]self with legs and back," when Propeck applied the breaks. See, Complaint, at ¶¶15, 16. This situation can be contrasted with Brown v. Missouri Department of Corrections, supra, in which the plaintiffs allegedly engaged in reckless behavior, such as speeding in inclement weather, and proceeding in a tight convoy formation, while driving inattentively -- which, ultimately, resulted in an accident.

-37-

Specifically, the Plaintiff does not allege that the braking was done for an improper purpose, or was done in a reckless fashion.  In addition, there is no allegation that the road damage was avoidable, or was encountered by Propeck in a purposeful, or reckless, fashion.[6]  We are mindful that the Plaintiff has alleged that he "would yell in response to be thrown around due to either, road condition as, braking or careless driving," and that it "would seem to spur Deputy [Propeck] to drive more reckless." Complaint, at ¶19.  However, we find very little in the Plaintiff's Complaint, that had not been alleged in Spencer v. Knapheide Truck Equipment Co., where the plaintiff claimed that "he had difficulty maintaining his balance on the bench and that he was tossed around as [the defendant] made turns, stops and starts," and was "thrown forward into the bulkhead of the compartment causing severe injuries and rendering him a quadriplegic."  Accordingly, we find that the Plaintiff has not alleged an actionable constitutional claim, as a result of his transport to the jailhouse, and we recommend that the Defendants' Motion for Summary Judgment as to the Eighth Amendment claim, which arises from the alleged failure to seatbelt the Plaintiff, be granted.

------

[6]Bumpy roads in Minnesota, as a result of cyclical freezes and thaws, is not an extraordinary occurrence in March, or in any other month of a Minnesota year.

The Plaintiff has also named Randy Fisher ("Fisher") as a Defendant in this action.   In his original Complaint, the Plaintiff alleges that "[t]he Respondent Supervisor is liable for the wrongful act of his subordinate." <u>Complaint</u>, at p. 7.  Here, we find that the Plaintiff's action against Fisher, who is the Sheriff of Cass County, is necessarily deficient, since the Plaintiff has not presented any evidence to demonstrate that Fisher actually participated in any aspect of the Plaintiff's transportation to the CCDC.  In order to sustain a claim under Section 1983, a plaintiff must show that the named defendants were directly, and personally involved in the illegal acts, or in the policy decision which created the unlawful context for those acts. See, e.g., <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001); <u>McNair v. Norris</u>, 2000 WL 490709 at *1 (8th Cir., April 27, 2000); <u>Martin v. Sergeant</u>, 780 F.2d 1334, 1337 (8th Cir. 1985).  Moreover, a warden's, or other official's, "'general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." <u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997), quoting <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995); see also, <u>Brisco-Wade v. Carnahan</u>, 149 F. Supp.2d 891, 899 (E.D. Mo. 2001); <u>Krein v. Norris</u>, 2001 WL 33406651 at * 3 (E.D. Ark., May 19, 2000).  Accordingly, in the absence of any evidence that Fisher was involved in the medical treatment of the Plaintiff, or

-39-

that he failed to properly train, supervise, or control the actions of Propeck, in anything other than a conclusory fashion, we find that there are no genuine issues of material fact, which would allow the Plaintiff to succeed in his claims against Fisher. Therefore, Fisher is entitled to Judgment as a matter of law.

Liberally construed, however, the Plaintiff's Complaint alleges that the Defendants committed various torts against him -- ostensibly based upon his treatment during the time he spent while in the custody of Cass County on March 12 and 13, 2006.  See, Complaint, at p. 6 (asserting tort liability and violations of the Minnesota Constitution for "personal injury, pain and suffering caused by the Defendant wrongful acts"); Proposed Amended Complaint ("The acts * * * constitute[d] torts under M.S.A. §466 et seq. and M.S.A. §375.31 * * * for the personal injury, pain and suffering of body and mind, mental anguish, intentional infliction of emotional distress, and for breach of duty, and right caused by these defendant's wrongful acts.").

As to the Plaintiff's purported State law claims, our Court of Appeals recently explained, in Gilson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim * * * [if] the district court has dismissed all claims over which it has

-40-

original jurisdiction."   Congress unambiguously gave
district courts discretion in 28 U.S.C. §1367(c) to dismiss
supplemental state law claims when all federal claims have
been dismissed, and there is no basis to find an abuse of
discretion here.  See Labickas v. Arkansas State University,
78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1,
30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine -- judicial

economy, convenience, fairness, and comity -- will point toward declining to exercise

jurisdiction over the remaining state-law claims."  Barstad v. Murray County, 420

F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343,

350 n. 7 (1988).

Here, we have found no Federal law violations, under either Title 42 U.S.C.

§1983, or the Eighth Amendment, and we have recommended the entry of Summary

Judgment, in favor of the Defendants, on those claims.  As a consequence, we further

recommend that the District Court decline to exercise supplemental jurisdiction over

the Plaintiff's purely State law claims.  Since this case was removed to this Court by

the Defendants, based upon the Federal law claims, it should be remanded to the State

District Court for Washington County in order to resolve the remaining State law

claims.  As a result, we recommend that this action, pruned of its Federal claims, be remanded to the Washington County District Court.

      C.     The Plaintiff's Motions for Discovery.

        The Plaintiff has presented various Motions for Discovery, and to preserve evidence.  See, Docket Nos. 12, 13, and 23.  However, counsel for the Defendants avers that no discovery requests were served prior to the Plaintiff's discovery Motions, and no good faith effort was undertaken to resolve any discovery dispute, prior to the Motions to Compel.  See, Affidavit of Jason M. Hill, Docket 29-1, at ¶¶4-5.  Furthermore, we have recognized that Orders to Preserve Evidence "being in the nature of an injunctive remedy, should only issue upon an adequate showing that equitable relief was warranted."  Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc., Archer-Daniels-Midland Co., 1995 WL 783610 at *3 (D. Minn., October 20, 1995), citing Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42 (E.D. La. 1966), and Cunningham v. Bower, 1989 WL 35993 (D. Kan., March 21, 1989).  Since the Plaintiff has made no showing that any evidence is likely to be destroyed, and his Motions to Compel, which were filed prior to making any formal discovery requests, are premature, we recommend that the Plaintiff's discovery Motions be denied.

        NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiff's Motion to Amend his Complaint [Docket No. 17] be granted, in part, as more fully detailed in the text of this Report.

2.     That the Defendants' Motion for Summary Judgment [Docket No. 7] be granted, but only as to the Plaintiff's Federal law claims.

3.     That the Plaintiff's Motions to Compel Discovery, and to Preserve Evidence [Docket Nos. 12, 13, and 23] be denied.

4.     That the Plaintiff's State law claims be remanded to the State District Court for Washington County, from which it was removed.


Dated:  February 16, 2007                    *s/Raymond L. Erickson*
                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 5, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with

this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 5, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.